**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 21-14244-CV-MIDDLEBROOKS

ERIN WRIGHT,

      Plaintiff,

v.

PAUL BLACKMAN, in his
Official Capacity as Highlands
County Sheriff,

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant Paul Blackman's Motion for

Summary Judgment, filed on December 2, 2021. (DE 30). The Motion is fully briefed. (DE 38;

DE 45). For the following reasons, the Motion is granted in part and denied in part.

### I.      BACKGROUND

In this lawsuit, Plaintiff brings claims under the Family and Medical Leave Act ("FMLA"),

the Americans with Disabilities Act ("ADA"), the Florida Civil Rights Act of 1992 ("FCRA"), the

Rehabilitation Act of 1973 ("Rehab Act"), and the Equal Pay Act ("EPA"). (DE 20). Although the

Parties dispute the particulars, these claims arise from the end of Plaintiff's employment with the

Highland County Sheriff's Office ("HCSO")—according to Plaintiff, after she was fired, and,

according to Defendant, after she resigned. (DE 39, Pl.'s Statement of Material Facts, at ¶ 27[1]; DE

---

[1] In his Reply in support of his Motion for Summary Judgment, Defendant asks that I deem all his facts admitted because Plaintiff does not limit her Statement of Material Facts "to evidence specific to a particular dispute." (DE 45 at 1). According to Defendant, Plaintiff "uses her 'disputes' as an opportunity to introduce additional facts and, more egregiously, argue her position," which he views as in conflict with Local Rule 56.1. I am not persuaded by Defendant's argument. While

31, Def.'s Statement of Material Facts, at ¶ 27). At the heart of this dispute is the cause of Plaintiff's departure from the HCSO. Plaintiff believes that she was fired because she took FMLA leave and because of her disability. Defendant maintains that neither played a role in the end of her employment with the HCSO; rather, according to Defendant, Plaintiff resigned when she could no longer perform the essential functions of her job.

Plaintiff has worked for the HCSO as a civilian evidence technician since 2008. (DE 31 at ¶ 1; DE 39 at ¶ 1). As an evidence technician, Plaintiff impounded evidence[2] and handled computer-based entries in the Florida Department of Law Enforcement's and HCSO's databases,[3] among other tasks. (DE 31 at ¶ 2; DE 39 at ¶ 2). On September 14, 2020, Plaintiff was diagnosed with colon cancer. (DE 31 at ¶ 4; DE 39 at ¶ 4). As a result of her diagnosis, Plaintiff requested and was granted twelve weeks of leave under the FMLA. (DE 31 at ¶¶ 6, 10; DE 39 at ¶¶ 6, 10). Through her own accrued paid time off and donated leave, Plaintiff was paid for the duration of her FMLA leave, as well as for seven additional weeks of non-FMLA leave. (DE 31 at ¶¶ 10, 15; DE 39 at ¶¶ 10, 15). During her leave, Plaintiff underwent a surgery to remove her colon and a second surgery on December 28, 2020 to remove an ileostomy. (DE 31 at ¶ 17; DE 39 at ¶ 17). While these surgeries were lifesaving, they left Plaintiff with bowel issues that complicated her return to work. (DE 31 at ¶ 19; DE 39 at ¶ 19).

---

Plaintiff's responses to Defendant's factual statements are at times argumentative, she has still substantially complied with the Local Rule. She has clearly indicated whether each of Defendant's statements of fact are opposed or unopposed, and she kept her responses to each fact related to the topic of that fact.

[2] According to Defendant, this was the "primary core function" of Plaintiff's position. (DE 31 at ¶ 2).

[3] According to Plaintiff, this was the "core function" of her position. (DE 39 at ¶ 2).

On January 26, 2021, Plaintiff's physicians informed her that she should request to work from home as an accommodation for her ongoing bowel issues. (DE 31 at ¶ 19; DE 39 at ¶ 19). To discuss her return to work, on February 9, 2021 Plaintiff sent Defendant a text message to schedule a meeting. (DE 31 at ¶ 20; DE 39 at ¶ 20). The Parties scheduled a meeting for the following day. (DE 31 ¶ 21; DE 39 at ¶ 21). They characterize the nature of the meeting differently. (*Id.*). According to Plaintiff, she scheduled the meeting to discuss her need for an accommodation, and Defendant understood that this was the purpose of their meeting. (DE 39 at ¶¶ 21–22). But according to Defendant, Plaintiff requested the meeting to inform him that she could not return to work yet. (DE 31 at ¶ 31). Whatever the case may be, the meeting did not go well. Plaintiff represents that she requested to work from home and that Defendant informed her that "That is not even an option. In fact, you no longer have a position in evidence." (DE 39 at ¶ 21). Plaintiff understood this to mean that she was fired. (*Id.* at 22). Defendant, on the other hand, understood that Plaintiff wanted to resign and he walked her, apparently in tears, to human resources so that she could fill out her resignation paperwork. (DE 31 at ¶ 27; DE 39 at ¶ 36). Plaintiff did not submit any resignation paperwork and did not return to work.

This suit followed. Plaintiff's Second Amended Complaint asserts twelve counts against Defendant: eleven related to the end of her employment with the HCSO, and one related to her compensation while she was there. (DE 20 at ¶¶ 44–131). Counts I and II allege that Defendant interfered with Plaintiff's FMLA leave and retaliated against her for exercising her right to take it, respectively. (*Id.* at ¶¶ 44–54). Counts III, IV, and V allege that Defendant violated the ADA by discriminating against Plaintiff because of her disability, denying her request for a reasonable accommodation, and retaliating against her for requesting an accommodation. (*Id.* at ¶¶ 55–72). Counts VI, VII, and VIII mirror Counts III, IV, and V, but are brought under the Florida Civil

Rights Act. (*Id.* at ¶¶ 73–90), as do Counts IX, X, and XI, brought under the Rehab Act. (*Id.* at 91–127). Finally, Count XII alleges that Defendant violated the EPA by paying Plaintiff less than her male counterparts who performed the same work. (*Id.* at 128–131).

Defendant now moves to dismiss all twelve counts in Plaintiff's Second Amended Complaint. (DE 30).  To briefly summarize, Defendant argues that he is entitled to summary judgment on Plaintiff's FMLA claims because Plaintiff was granted and took all twelve weeks of her FMLA leave and was granted seven additional weeks of leave, during which her job remained available. As to Plaintiff's ADA, FCRA, and Rehab Act discrimination claims, Defendant argues that the accommodation Plaintiff requested—to work from home—was not reasonable because it would not allow her to perform the essential functions of her job, and, as such, he did not discriminate against her for denying it. Defendant next argues that Plaintiff's disability retaliation claims fail because he had a legitimate, non-discriminatory reason for denying her accommodation request and for separating her from the HCSO—that is, because she could no longer do her job, with or without a reasonable accommodation. Finally, Defendant argues that he is entitled to summary judgment on Plaintiff's EPA claim because the undisputed evidence demonstrates that the male evidence technician he employed earned less than Plaintiff did.

## II.      LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-

movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the Court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." *Barnett v. PA Consulting Group, Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. If the non-moving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment is warranted. *Id.* at 322. The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

### III.    DISCUSSION

#### A.  FMLA Claims

**1. Interference (Count I)**

Defendant first argues that he is entitled to summary judgment on Plaintiff's FMLA interference claim. To establish a prima facie case for FMLA interference, Plaintiff must "demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied." *Strickland v. Water Works & Sewer Bd. Of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). After taking FMLA leave, an employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to an equivalent position. 29 U.S.C. § 2614(a)(1).

Defendant contends that the record evidence conclusively shows that Plaintiff was not denied a benefit that she was entitled to because she received twelve full weeks of FMLA leave, plus an additional seven weeks of non-FMLA leave. (DE 30 at 4). The FMLA "provides for only 12 weeks of leave" and "does not suggest that the 12 week entitlement may be extended." *McGregor v. AutoZone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999). Plaintiff's FMLA leave began on September 30, 2020 and ended on December 22, 2020. At the expiration of her FMLA leave, Plaintiff was given another seven weeks of leave.

"[A] plaintiff suffers no FMLA injury when she receives all the leave she requests, and indeed is paid for most of it." *Graham v. State Farm Mut. Ins. Co.*, 1939 F.3d 1274, 1274 (11th Cir. 1999) (per curiam). Because she was granted and used the twelve full weeks of FMLA leave, Plaintiff focuses her FMLA interference claim on an email exchange between Plaintiff and Kathy Fluharty, who was part of Defendant's human resources department. On November 30, 2020, Plaintiff and Fluharty exchanged the following emails under the subject line "FMLA leave":

| | |
|---|---|
| Plaintiff: | Hey Kathy, Not sure if I need to do something or where we are with my FMLA. Do I need to send another request email yet? |

> Fluharty: I have finance checking on this since they are the ones to track. We will let you know when you need to solicit again.
>
> Plaintiff: Thank you.
>
> Fluharty: Okay, I have just been notified you will be short this next pay period so you need to request again now. Send you request for the 2nd solicitation to Major Hood.
>
> Plaintiff: Done, thank you[.]

(DE 44-1). According to Plaintiff, this exchange demonstrates that Fluharty ignored Plaintiff's request for a status update on her FMLA leave, and that this constituted an interference with her leave because Fluharty was obligated to provide Plaintiff with an accounting of her FMLA time. *See* 29 C.F.R. § 825.300(d)(6); 29 C.F.R. § 825.300(c)(5) ("Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA."). To support her claim, Plaintiff relies on *Graziadio v. Culinary Inst. Of Am.*, 817 F.3d 415, 427 (2d Cir. 2016). But that case was different. There, the plaintiff called and emailed her employer repeatedly to learn what she needed to do to resume work, but her employer "studiously avoided responding to any of [the plaintiff's] pleas for clarification." *Id.* at 428. Here, Fluharty responded immediately to Plaintiff's email, and, after Plaintiff thanked her twice, presumably believed that she had provided the clarification that Plaintiff requested. Had Plaintiff been seeking different information, she could have followed up. That Plaintiff's "chain of command" was simultaneously exchanging emails about the status of Plaintiff's FMLA leave does not change this fact; had Plaintiff wanted to know the date her FMLA leave concluded—which was ambiguous from her email stating only that she was "not sure . . . where we are with my FMLA"—she could have followed up. No reasonable factfinder could conclude that Fluharty's email constituted an attempt to interfere with Plaintiff's FMLA leave.

Plaintiff next argues that Defendant interfered with her right to take FMLA leave by firing her instead of allowing her to return to her position. But, as discussed above, Plaintiff did not return to work at the end of her twelve weeks of FMLA leave; rather, she took an additional seven weeks of non-FMLA leave. To reiterate, the FMLA "provides for only 12 weeks of leave" and "does not suggest that the 12 week entitlement may be extended." 180 F.3d at 1308. Thus, after Plaintiff's twelve weeks of FMLA leave expired on December 22, 2020 and Plaintiff did not return to work, the FMLA did not require Defendant to hold her position open any longer. Nor did the FMLA require Defendant to offer Plaintiff her position in a modified capacity. *See Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017) ("The FMLA regulations provide that an employee returning from FMLA leave who cannot perform the essential functions of [her] job due to a physical condition need not be reinstated or restored to another position.") (citing 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.")).

Plaintiff was entitled to receive twelve weeks of FMLA leave. It is undisputed that Defendant granted Plaintiff that leave, and Plaintiff took it, as well as an additional seven weeks of non-FMLA leave. No reasonable factfinder could conclude that Defendant interfered with Plaintiff's exercise of her FMLA right to twelve weeks of leave, which Plaintiff took and during which time Plaintiff's job remained open. As such, Defendant is entitled to summary judgment on Count I.

**2.Retaliation (Count II)**

Defendant next argues that he is entitled to summary judgment on Plaintiff's claim for FMLA retaliation. To succeed on her retaliation claim, Plaintiff must show that Defendant "intentionally discriminated against h[er] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. Plaintiff may do so through either direct evidence, which "reflects 'a discriminatory or retaliatory attitude correlated to the discrimination or retaliation complained of by the employee'" without "inference or presumption," or through indirect evidence, which requires analysis under the *McDonnell Douglas* burden-shifting framework. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004); *Burrell v. Bd. Of Trustees of Georgia Mil. Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997).

As to direct evidence, Plaintiff points to the undisputed fact that one of her supervisors, Captain Starling, told other employees that Plaintiff would not be returning to work at HCSO. (DE 39 at ¶ 78; DE 44 at ¶ 78). Additionally, Plaintiff's direct supervisor, Lieutenant Bailey, told Captain Starling that he did not want Plaintiff to return to the evidence department. (DE 39 at ¶ 77; DE 44 at ¶ 77). But these facts do not constitute direct evidence of retaliation because they "do not prove, without requiring an inference," that Defendant discriminated against Plaintiff "based on the exercise of h[er] FMLA rights." *Jones*, 854 F.3d at 1271. There is nothing in the record that suggests that Captain Starling or Lieutenant Bailey stated that they did not want Plaintiff to return *because she exercised her FMLA rights*, and drawing that conclusion requires inference or presumption. As such, Plaintiff has not pointed to any direct evidence that Defendant discriminated against her for exercising her FMLA rights.

Plaintiff next argues that Defendant is not entitled to summary judgment because she has pointed to circumstantial evidence that Defendant retaliated against her. "Under the *McDonnell*

9

*Douglas* framework, the plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was casually related to the protected activity." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). If Plaintiff makes out her prima facie case, the burden then shifts back to Defendant to "articulate a legitimate, nondiscriminatory reason" for his employment decision. *Id.* And if he does so, the burden shifts back to Plaintiff to show that Defendant's proffered reason is pretextual. *Id.* at 1244.

The Parties do not dispute that Plaintiff's request for FMLA leave was statutorily protected activity. They do dispute whether Plaintiff suffered an adverse employment decision: Defendant maintains that Plaintiff resigned, while she insists that she was fired. (*Compare* DE 31 at ¶ 27 *with* DE 39 at ¶¶ 27–28). Because this creates a material dispute of fact, and because such disputes must be resolved in Plaintiff's favor at this stage, I will proceed under the assumption that Defendant fired Plaintiff and that Plaintiff did not voluntarily resign.

As to the third factor, Plaintiff argues that Defendant's decision was causally related to her exercise of her FMLA rights because of the close temporal proximity between when she took leave and when she was fired. "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). But "temporal proximity, without more, must be 'very close'" to satisfy the causation requirement. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that "[a] three to four month disparity" between the statutorily protected conduct and the adverse employment action is

10

too long to establish temporal proximity)). On the other hand, "a period as much as one month between the protected express and the adverse action is not too protracted" to establish causation. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

In this circuit, "temporal proximity, for the purpose of establishing the causation prong of a prima facie case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Jones*, 854 F.3d at 1272. Defendant incorrectly calculates the temporal gap between Plaintiff's leave and her "separation from employment" from the day she requested leave on September 30, 2020 instead of the final day of her FMLA leave, which was December 22, 2020. But the month-and-a-half[4] proximity between the final day of Plaintiff's FMLA leave and the date of her separation from HCSC falls within the amount of time that the Eleventh Circuit has deemed sufficient to support an inference of a causal connection. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that a seven-week timeframe was "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."). Thus, Plaintiff has established a prima facie case of FMLA retaliation.

But while Plaintiff has made out her prima facie case, Defendant has met his burden of offering a legitimate, nondiscriminatory reason for his employment decision. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) ("[T]he employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it

---

[4] Plaintiff asserts that she was fired on February 10, 2022, while Defendant contends that her separation was effective on February 26, 2022. (*Compare* DE 39 at ¶ 22 *with* DE 31 at ¶ 35). Because factual disputes at this stage are to be resolved in favor of the nonmoving party, I use the February 10 date for purposes of my analysis here.

11

discriminated against the plaintiff.") (quoting *Combs v. Plantation Patterns*, 106 F.3d 1419, 1528 (11th Cir. 1997)). Defendant contends that Plaintiff was fired because she did not return to work at the conclusion of her FMLA leave. As discussed above, this is a legitimate reason for an employer not to restore an employee after the exercise of an FMLA right. *McGregor v. AutoZone, Inc.*, 180 F.3d at 1308.

Plaintiff argues, however, that this reason is pretextual, and that she was really fired in retaliation for the exercise of her FMLA rights. To show pretext, Plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman*, 229 F.3d at 1024. Simply "quarrelling with the wisdom" of the reason provided is not enough, but demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact could find them unworthy of credence" can be. *Combs* 106 F.3d at 1538. To support her claim that Defendant's proffered explanation is pretextual, Plaintiff points again to the close temporal connection between the final day of her FMLA leave and when she was fired, as well as the comments Plaintiff's supervisors made about not wanting her to return after the conclusion of her leave. (DE 38 at 16). While in my view this constitutes weak evidence of pretext, I am unable to find that "no reasonable jury could conclude" that, based on this evidence, Defendant's proffered reason is pretextual. *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008). Thus, I will deny Defendant's Motion as to Count II.

### B.  ADA, FCRA, and Rehab Act Claims[5]

### 1. Disability Discrimination (Counts III, VI, and IX)

Defendant has also moved for summary judgment on Plaintiff's disability discrimination claims brought under the ADA, the FCRA, and the Rehab Act. The ADA provides that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge or employees" and any of the "terms, conditions, and privileges of employment." It "imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship upon the employer." *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). Disability discrimination claims under the ADA are analyzed under the *McDonnell Douglas* burden-shifting framework discussed above. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Plaintiff must therefore first establish a prima facie case of disability discrimination.

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must show that she "(1) ha[s] a disability; (2) [is] qualified, with or without reasonable accommodations; and (3) w[as] unlawfully discriminated against because of [her] disability." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356–57 (11th Cir. 2004) (citing 42 U.S.C. § 12112(a)). The Parties do not dispute that Plaintiff has a disability within the meaning of the ADA. They do dispute whether she was qualified and whether she was unlawfully discriminated against. An employer is qualified if, at the relevant time, she "could perform the essential functions of the job in question with or

---

[5] Claims of disability discrimination under the ADA, the FCRA, and the Rehab Act are analyzed the same way. *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258. 1263–64 (11th Cir. 2007) (stating that the FCRA is analyzed under the same framework as the ADA); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (stating that the Rehab Act is governed by the same standards used in ADA cases). These claims are therefore addressed together.

without reasonable accommodations." *Lucas v. W.W. Granger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2011).

Plaintiff argues that Defendant discriminated against her because of her disability when he denied her request for an accommodation and did not offer any alternative accommodations. (DE 38 at 15). As support, Plaintiff points out that the ADA may require an employer "to initiate an informal, interactive process with the individual with a disability in need of an accommodation" to identify the person's limitations and reasonable accommodations that could overcome those limitations. 29 C.F.R. § 1630.2(o)(ii)(3). She argues that she was qualified to do her job with an accommodation—working "from home partly on a temporary basis like she did during the pandemic"—because in April 2020 she and the other evidence technicians did so. (DE 39 at ¶ 22).

Defendant asserts that the undisputed record evidence establishes that Plaintiff was not qualified to be an evidence technician because she could not perform the essential functions of her job, and that she was additionally not qualified because she had not been cleared by her doctor to return to work and did not provide a date when she would be able to return in her full capacity. (DE 30 at 11–12). "'Essential functions'" are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (citing 29 C.F.R. § 1630.2(n)(2)(1)). "In determining what functions are deemed essential, the ADA states 'consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* (citing 42 U.S.C. § 12111(8)). "A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed." *Id.* (citing 29 C.F.R. § 1630.2(n)(2)(ii)).

Defendant argues that impoundment is an essential function of the job of an evidence technician, and that Plaintiff was not able to perform this function. (DE 30 at 17). He further alleges that all evidence technicians were required to perform all functions of the evidence technician role. As such, Defendant argues that Plaintiff was not qualified.

Viewing all facts in the light most favorable to Plaintiff, a material dispute of fact exists as to whether Plaintiff was qualified to be an evidence technician with a reasonable accommodation. First, the Parties appear to dispute the nature of the accommodation that Plaintiff requested. According to Plaintiff, she asked "to continue doing the research from home as she did during the pandemic," "to continue collecting the paperwork from home, pre-logging FDLE entries, and then come in to [sic] the office to do the final steps of packaging and mailing the evidence." (DE 39 at ¶ 22). Defendant—in an apparent contradiction—argues both that Plaintiff did not request any accommodation (DE 31 at ¶ 22) and that "Plaintiff only requested working from home as an accommodation." (DE 44 at ¶ 58). These factual disputes are material. Defendant's assertion that Plaintiff was not qualified to perform her job is premised on her being unable to come to work to impound evidence, which he argues is an essential function of the role. If Plaintiff offered to work from home on a part time basis but to still come in to complete the impoundment of evidence, she would appear to be qualified for her position and a reasonable factfinder could conclude that Defendant discriminated against her by failing to make the accommodation. Defendant's Motion for Summary Judgment is therefore denied with respect to these claims.

### 2. Denial of Reasonable Accommodation (Counts IV, VII, and XI)

Defendant next moves for summary judgments on Plaintiff's claims that she was denied a reasonable accommodation under the ADA, the FCRA, and the Rehab Act. Under the ADA, the term "reasonable accommodation" may include, *inter alia*, "job restructuring, parttime or modified

work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustments or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). But "an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (internal quotation omitted).

Defendant argues that the accommodation Plaintiff requested—to work from home—was not reasonable. (DE 30 at 11–12). "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255. "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas*, 257 F.3d at 1255–56.

Plaintiff argues that her requested accommodation was reasonable, and that she has satisfied her burden of showing as much, because she worked from home part of the time during the start of the pandemic. (DE 38 at 14). As discussed above, Plaintiff has satisfied her burden of raising a genuine dispute of fact about whether her requested accommodation was reasonable in light of Defendant's policy during the pandemic, which allowed Plaintiff and the other evidence technicians to work from home on a part time basis. Thus, Defendant's Motion for Summary Judgment is also denied as to Counts IV, VII, and XI.

### 3. Retaliation (Counts V, VIII, and X)

#### i.      ADA and FCRA Retaliation

Defendant has additionally moved for summary judgment on Plaintiff's retaliation claims under the ADA and the FCRA. The ADA provides that "no person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). Because this provision "creates a prohibition on retaliation under the ADA that is similar to Title VII's prohibition on retaliation," in this circuit an ADA retaliation claim is assessed under the same framework that is employed for retaliation claims under Title VII. *Stewart*, 117 F.3d at 1287 (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1075–77 (11th Cir. 1996)). Applying that framework to establish a prima facie case of retaliation, Plaintiff must show: "(1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Id.* The burden then shifts to Defendant to offer a legitimate, non-discriminatory reasons for its actions, and, if Defendant does, the burden shifts back to Plaintiff to demonstrate that the employer's proffered reasons are pretextual. *Id.*

Plaintiff argues that she has made her prima facie case because (1) her request for an accommodation was statutorily protected; (2) she was fired; and (3) she requested a reasonable accommodation and was fired on the same day. (DE 38 at 19). Viewing the facts in the light most favorable to her, Plaintiff has thus established her prima facie case, and the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for his employment decision. Defendant argues that "all of the evidence in the record shows that Defendant separated Plaintiff's employment solely as the result of her inability to return to work in any capacity and her failure to provide a release to return to work." (DE 30 at 16). But based on (1) the fact that Defendant permitted evidence technicians to work from home during part of the day in April 2020 and (2) the close temporal connection between the time Plaintiff alleges she was fired and when she requested an accommodation, Defendant has not met its high burden of showing that "no

reasonable jury could conclude" that its offered reason is pretextual. *Martin*, 543 F.3d at 1267. I will therefore deny Defendant's Motion as to Counts V, VIII, and X.

ii.      **Rehab Act Retaliation**

While Defendant is not entitled to summary judgment on Plaintiff's retaliation claims under the ADA and the FCRA, he is entitled to summary judgment on Plaintiff's retaliation claims under the Rehab Act. Plaintiff alleges that Defendant violated the Rehab Act by retaliating against her for "opposing, complaining, and raising the illegal and discriminatory practices, failure to accommodate, and hostile work environment of Defendant directly to Defendant and then further to the federal Equal Employment Opportunity Commission ('EEOC')." (DE 20 at ¶ 111). But the undisputed record evidence demonstrates that Plaintiff did not make any internal complaints while employed with the HCSO, and that she did not file a Charge of Discrimination to the EEOC until March 5, 2021, which is after she was allegedly fired. (DE 30 at 17). No reasonable factfinder could conclude that Defendant retaliated against Plaintiff for reporting him to the EEOC when she did not report him until after she was fired. Thus, Defendant's Motion for Summary Judgment is granted as to Count X.

**4. Equal Pay Act Claim (Count XII)**

Finally, Defendant has moved for summary judgment on Plaintiff's EPA claim. To establish a prima facie case of an EPA violation, Plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Once Plaintiff makes out her prima facie case, "the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act: '(i) a seniority system; (ii) a merit

18

system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Id.* at 1532–33.

Here, Plaintiff has not established a prima facie case for an EPA violation. The record evidence shows that Defendant paid Plaintiff more than the male evidence technician he employed. (DE 31 at ¶ 11). Plaintiff earned $17.72 per hour, and, after a raise, $18.25 per hour. (DE 31 at ¶ 11). Stacy Andrews, a male, earned $17.50 per hour, and, after a raise, $18.03 per hour when he was employed as an evidence technician. (*Id.*). Plaintiff appears to be arguing that because Andrews earned more money than she did when he was a crime scene detective and she was an evidence technician, Defendant violated the EPA. But because the undisputed evidence shows that Defendant paid Andrews less than Plaintiff *when they performed the same role*, no reasonable factfinder could find that Defendant paid Plaintiff less than Andrews for equal work. Plaintiff has not made out a prima facie case for a violation of the EPA and no reasonable factfinder could find in her favor on this claim. Accordingly, Defendant's Motion for Summary Judgment is granted as to Count XII.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion for Summary Judgment (DE 30) is **GRANTED IN PART** and **DENIED IN PART**. It is granted as to Counts I, X, and XII. It is denied as to Counts II, III, IV, V, VI, VII, VIII, IX, and XI.

(2) A Final Judgment will be separately entered as to Counts I, X, and XII.

**SIGNED** in Chambers at West Palm Beach, Florida, this 4th day of February, 2022.

Donald M. Middlebrooks
United States District Judge

cc: counsel of record

20